USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KATHLEEN M. WELLS,

      Plaintiff,   07 Civ. 1287 (JGK)

- against -      MEMORANDUM OPINION AND
             ORDER
MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

---

JOHN G. KOELTL, District Judge:

  The plaintiff, Kathleen M. Wells, brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of a final determination of the Commissioner of Social Security ("the Commissioner") that the plaintiff was not entitled to Supplemental Security Income ("SSI"). In response, the Commissioner moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) to affirm the Commissioner's decision that the plaintiff is not entitled to SSI under the Social Security Act ("the Act").

  The plaintiff filed an application for SSI benefits on October 14, 2004, alleging that she had been disabled since August 16, 2004. (R. at 18, 470.) The application was denied initially on March 23, 2005, and again upon reconsideration on June 14, 2005. (R. at 33, 42.) The plaintiff filed a timely hearing request and received a hearing before an Administrative Law Judge ("ALJ"), Marilyn Faulkner, on February 8, 2006. (R. at

90.) The ALJ considered the case de novo and issued a decision on August 21, 2006 denying the plaintiff's claim. (R. at 16-30.) The decision became the Commissioner's final decision on November 27, 2006, when the Appeals Council denied the plaintiff's request for review of the ALJ's decision. (R. at 6-8.) This appeal followed.

I.

The administrative record contains the following facts. The plaintiff was born on November 12, 1959. (R. at 147.) She finished college and earned a bachelor of arts in business administration. (R. at 129, 470.) In the previous fifteen years, the plaintiff has worked in clerical jobs and as an entrepreneur. (R. at 132, 471-73.) The plaintiff indicated that these clerical jobs were sedentary in nature, involving typing, answering phones and frequently lifting less than ten pounds. (R. at 132, 473-74.)

The plaintiff stated that she has been unable to work since August 2004 due to asthma, chronic obstructive pulmonary disease and allergic rhinitis. (R. at 124.) The plaintiff testified that she took a variety of medications that have been largely successful in controlling her asthma and allergies but that these medications have left her fatigued. (R. at 481-82.) The plaintiff stated that her illness was caused by mold in her

2

apartment. (R. at 480.) However, the plaintiff testified that she did not want to move out of her apartment because she lacked the resources to do so. (Id.)

The plaintiff also submitted reports concerning the condition of her apartment. On August 27, 2004, the plaintiff was informed that her air conditioner contained fungal growth and heavy levels of dust and should be replaced. (R. at 82.) On October 31, 2004, the plaintiff was informed that there was mold in her apartment and it was recommended that the floors, carpeting, and insulation be replaced. (R. at 58-65.)

II.

The record also contains the plaintiff's relevant medical history. Dr. Lisa Golding-Granado treated the plaintiff from August 2003 to early-2006. (R. at 193, 479.) During this time, Dr. Golding-Granado diagnosed the plaintiff with asthma, chronic pulmonary disease and allergic rhinitis. (R. at 211.) On August 13, 2003, Dr. Golding-Granado ordered a chest x-ray which revealed no active disease. (R. at 171.)

On August 11, 2004, the plaintiff came under the care of Dr. Sharmalie Perera, an internist. (R. at 173.) Dr. Perera prescribed an oxygen machine for breathing. (Id.) On August 23, 2004, the plaintiff went to Dr. Golding-Granado complaining of an asthmatic exacerbation. (R. at 212.) On examination, the

3

plaintiff had clear lungs. (Id.) Prednisone was prescribed and the plaintiff was instructed to avoid mold and allergens. (Id.)

Also on August 23, 2004, Dr. Golding-Granado completed a physician's examination report diagnosing the plaintiff with asthma, emphysema and chest pain with an onset of August 16, 2004 but noting that the plaintiff had had this condition for years. (R. at 215.) Dr. Golding-Granado indicated that the plaintiff had limitations in standing, walking, climbing, stopping, bending, lifting and using her hands due to shortness of breath. (Id.) Dr. Golding-Granado opined that the plaintiff could not work from August 16, 2004 to October 18, 2004. (R. at 216.) Attached to this report was another sheet specifying that the plaintiff could not work from October 18, 2004 to April 18, 2005. (R. at 217.)

On August 27, 2004, a chest x-ray ordered by Dr. Golding-Granado revealed that the plaintiff's chest was normal. (R. at 169.) On September 2, 2004, Dr. Golding-Granado completed a To Whom It May Concern letter indicating that the plaintiff has a demonstrated sensitivity to mold. (R. at 196.) She advised that the plaintiff should be relocated to a mold-free environment. (Id.) Follow-up visits to Dr. Golding-Granado from September 2, 2004 to January 31, 2005 established that the plaintiff had clear lungs and shortness of breath on roughly half of her visits. (R. at 200-11.)

4

On November 22, 2004, Dr. Golding-Granado completed a medical report describing the plaintiff's treatments and stating her opinion on the plaintiff's ability to perform work-related activities. (R. at 192-95.) She indicated that the plaintiff could lift and carry up to two pounds, stand and/or walk less than two hours per day, sit less than six hours per day, neither push nor pull and should not be in environments with dust or extreme temperature changes. (R. at 194.)

On February 10, 2005, the plaintiff presented herself to Dr. Zaza I. Cohen, a pulmonary specialist. He diagnosed the plaintiff with mild asthma exacerbated by her home environment, likely from molds, and recommended a change in living conditions. (R. at 178-79.) Dr. Jeffrey Kim, a resident with whom Dr. Cohen discussed the plaintiff's case, handwrote on Dr. Cohen's report that based on a blood gas analysis from August 13, 2004, there was no indication that the plaintiff needed supplemental oxygen. (R. at 179.)

On March 2, 2005, Dr. Golding-Granado reported that the plaintiff underwent spirometry without bronchodilator therapy which was normal. (R. at 199.) In addition, patch testing showed that the plaintiff was allergic to cats, ragweed and penicillin. (R. at 198.)

On April 4, 2005, Dr. Golding-Granado completed another medical report indicating that the plaintiff could not work from

April 18, 2005 to April 18, 2006. (R. at 203.) She reported that the plaintiff had limitations in standing, climbing, stooping, bending, and lifting because these activities caused coughing and shortness of breath. (R. at 202.) Dr. Golding also reported that the plaintiff had an adjustment disorder. (R. at 204.)

On September 16, 2005, the plaintiff, under the care of Dr. Eckardt Johanning, an Occupational and Environmental specialist, had laboratory testing on her IgG, IgM and IgA Quantitation. (R. at 264.) The results of these tests were within normal limits. (Id.) Included with these results were previous lab results of pulmonary function studies from August 2004. These tests concluded that that although the plaintiff had an airway obstruction and a diffusion defect suggesting emphysema, the absence of over-inflation was inconsistent with the diagnosis of emphysema. (R. at 274.) The plaintiff was diagnosed with mild obstructive airway disease-reversible minimal diffusion defect. (Id.)

On September 23, 2005, Dr. Johanning reported that the plaintiff had asthma with symptoms consisting of shortness of breath, chest tightness, wheezing, fatigue, and coughing. (R. at 222-23, 229.)

On October 16, 2005, Dr. Golding-Granado examined the plaintiff and found that the plaintiff's lungs were clear and

diagnosed the plaintiff with sinusitis. (R. at 328.) On December 27, 2005, after blood and urine testing, Dr. Golding-Granado reported no abnormal findings and diagnosed the plaintiff with asthma and allergies. (R. at 324-26.)

On January 24, 2006, Dr. Johanning reported that the plaintiff's recent laboratory results were abnormal and may likely be in relationship with prior environmental or occupational exposure that was previously investigated. (R. at 301.) Dr. Johanning suggested that the plaintiff make arrangements for a follow-up visit. (Id.)

At the hearing on February 8, 2006, the ALJ obtained the testimony of Dr. Harlan Mellk, a board-certified internal medicine physician. (R. at 25.) Dr. Mellk indicated that he had reviewed the medical evidence in the record. (R. at 491-94.) Dr. Mellk testified that the claimant could perform at least sedentary work, including walk and/or stand for two hours, sit from six to eight hours and lift no more than ten pounds occasionally. (R. at 494-95.) Dr. Mellk opined that the plaintiff's real problem was the allergic manifestations and that she should avoid dust, fumes, molds, smoke, perfumes and temperature extremes. (R. at 494.) Dr. Mellk further opined that the plaintiff would have the same problems with mold in any apartment unless it was a new apartment. (R. at 498.)

7

After the hearing the ALJ arranged for the plaintiff to have a psychiatric consultative examination in light of Dr. Golding-Granado's report of the plaintiff having an adjustment disorder. (R. at 22.) However, the plaintiff denied any symptoms of mental illness and refused to attend the examination. (R. at 23.)

III.

A court may set aside a determination by the Commissioner only if it is based on legal error or is not supported by substantial evidence in the record. See 42 U.S.C. §§ 405(g), 1383(c)(3); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)); see also Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991); Acevedo v. Barnhart, 05 Civ. 8117, 2007 WL 1982753, at *3 (S.D.N.Y. July 3, 2007).

A claimant seeking SSI benefits is considered disabled if the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

8

which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).[1]

The analytical framework for evaluating claims of disability for SSI is defined by regulations of the Commissioner, which set forth a five-step inquiry. See 20 C.F.R. § 416.920. The Court of Appeals for the Second Circuit has described this five-step process as follows:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical capacity to do basic work activities.
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

---

[1] The definition of disability for the purposes of disability insurance benefits under Title II of the Act is similar. See 42 U.S.C. § 423(d)(1)(A). The determination of disability under Title II is also similar to the determination of disability for purposes of SSI disability benefits under Title XVI of the Act. Ramos v. Apfel, No. 97 Civ. 6435, 1999 WL 13043, at *4 n. 1 (S.D.N.Y. Jan. 12, 1999). Cases under 42 U.S.C. § 423 are cited interchangeably with cases under 42 U.S.C. § 1382c(a)(3). See Hankerson v. Harris, 636 F.2d 893, 895 n. 2 (2d Cir. 1980); Villanueva v. Barnhart, No. 03 Civ. 9021, 2005 WL 22846, at *4 n. 5 (S.D.N.Y. Jan. 3, 2005).

Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000) (internal citation omitted); see also Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999); Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995); Villanueva v. Barnhart, No. 03 Civ. 9021, 2005 WL 22846, at *6-7 (S.D.N.Y. Jan. 3, 2005).

The claimant bears the initial burden of proving that she is disabled within the meaning of the Act. See 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i); see also Shaw, 221 F.3d at 132; Rodriguez v. Apfel, No. 96 Civ. 8330, 1998 WL 150981, at *7 (S.D.N.Y. Mar. 31, 1998). This burden encompasses the first four steps described above. See Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983). If the claimant satisfies the burden of proof through the fourth step, she has established a prima facie case and the burden shifts to the Commissioner to prove the fifth step. See id. at 722-23; see also Infante v. Apfel, No. 97 Civ. 7689, 2001 WL 536930, at *4 (S.D.N.Y. May 21, 2001) (citing Berry, 675 F.2d at 467).

In meeting the burden of proof on the fifth step for SSI eligibility determinations, the Commissioner, under appropriate circumstances, may rely on the medical vocational guidelines contained in 20 C.F.R. Pt. 404, Subpart P, App. 2, commonly referred to as "the grids."[2] See 20 C.F.R. § 416.969. The grids

---

[2] The grids classify work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of

take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience.[3] Based on these factors, the grids indicate whether the claimant can engage in any other substantial gainful work that exists in the national economy. Generally, the result listed in the grids is dispositive on the issue of disability. However, the grids are not dispositive where they do not accurately represent a claimant's limitations because the claimant suffers from non-exertional limitations that significantly limit the claimant's capacity to work. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996); Garvin v. Barnhart, 254 F.Supp.2d 404, 409 (S.D.N.Y. 2003).

In the assessment of medical evidence, a treating physician's opinion is given controlling weight when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record...." 20 C.F.R. § 416.927(d)(2); Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993). The Commissioner's regulations require that greater weight generally be given to the opinion of a treating

---

requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling.
[3] Residual functional capacity is an assessment of an individual's ability, despite the impairment, to meet physical, mental, sensory, and other demands of jobs based on all relevant evidence. 20 C.F.R. § 416.945; Ramos v. Apfel, No. 97 Civ. 6435, 1999 WL 13043 at *5 n. 3 (S.D.N.Y. Jan. 12, 1999).

rather than a non-treating physician.

IV.

In this case the Commissioner is entitled to judgment on the pleadings. The ALJ carefully evaluated the plaintiff's claims of physical impairments, and there is substantial evidence to support the ALJ's determination that the plaintiff was not disabled within the meaning of the Act.

The ALJ undertook the appropriate sequential inquiry in the plaintiff's case. At step one, the ALJ correctly found that the plaintiff had not engaged in substantial gainful activity since August 16, 2004. (R. at 20.)

At step two, the ALJ determined that the plaintiff had "asthma, and reactive airway disease secondary to environmental allergens," which constituted "severe" medical impairments under the requirements in the regulations. (Id.)

At step three, the ALJ correctly determined that the plaintiff's impairments, although severe, did not meet or equal one of the listed impairments contained in 20 C.F.R. Pt. 404, Subpart P, App. 1. (R. at 26.)

At step four, the ALJ found that the plaintiff has a residual functional capacity to perform a wide range of sedentary work that entailed standing and/or walking for up to two hours, occasionally lifting up to ten pounds and avoiding

dust, pulmonary irritants and temperature extremes.  (R. at 27.)

The ALJ reached this conclusion after considering the physical functional capacity assessment of Dr. Mellk and the plaintiff's relevant medical records.  (Id.)  Dr. Mellk, who analyzed the plaintiff's medical records, found that the plaintiff could do sedentary work.  (R. at 491.)  Dr. Mellk noted that the plaintiff had been given Prednisone when her conditions were exacerbated but that she had not been on Prednisone since May 2005.  (R. at 25, 492-93.)  Further, the medical examination by Dr. Kim revealed no significantly abnormal results.  (R. at 27, 178.)  Dr. Kim performed a spirometry test which was within normal limits and instructed the plaintiff to move from her mold-infested apartment.  (R. at 27, 178.)  Dr. Kim also stated that the plaintiff did not need to use supplemental oxygen.  (R. at 28, 179.)

Dr. Golding-Granado, the plaintiff's treating physician, stated that the plaintiff was disabled.  However, the finding of disability is reserved to the Commissioner.  20 C.F.R. § 416.927(e)(2); Snell v. Apfel, 177 F. 3d, 128, 133 (2d Cir. 1999).  Moreover, the Commissioner was not required to give controlling weight to the findings of limitations on the plaintiff's ability to work, other than environmental restrictions, because they were not well supported by medically acceptable clinical and laboratory diagnostic techniques and

they were inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 416.927(d)(2); Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998). Furthermore, while the Commissioner is required to explain why the Commissioner does not accord controlling weight to findings by a treating physician, the Commissioner did so in this case because the ALJ specifically found that the residual functional capacity analysis by Dr. Golding-Granado in November 2004 had no time-frame as to her alleged incapacity to work and was not supported by clinical findings. (R. at 28.)

The ALJ also considered the plaintiff's subjective complaints of functional limitation. (R. at 27.) The ALJ concluded that although the plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, the plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible when compared to the impairments established by the medical history and objective clinical reports in the record. (Id.) These findings are grounded in substantial evidence in the record as a whole. The ALJ noted, for example, that the plaintiff's medications help to alleviate her symptoms. (R. at 28.) The ALJ also noted that the medical examination by Dr. Jeff Kim revealed no significantly abnormal results. (R. at 27.)

An ALJ has discretion to evaluate the credibility of a claimant and to make an independent judgment based on medical findings regarding the true extent of the claimant's disability. See Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984); Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983); Centano v. Apfel, 73 F.Supp.2d 333, 338 (S.D.N.Y. 1999) ("The ALJ's decision to discount plaintiff's subjective complaints of pain must be accepted by a reviewing court unless it is clearly erroneous."); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 n. 6 (S.D.N.Y. 1995).

Based on testimony of Mr. Rocco Meola, a vocational expert, that the plaintiff has only had part time work and it was difficult to determine whether it was substantial gainful activity, the ALJ proceeded to step five. (R. at 29.); see 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c). The ALJ consulted the grids, and based on the fact the plaintiff was a "younger" individual with at least a high school education and work experience and had the ability to engage in sedentary work, concluded that the plaintiff was "not disabled" during the period for which she sought benefits under the Act.[4] (R. at 29-30.); see 20 C.F.R. 416.920(g).

---

[4] A "younger person" is defined as being under age 50. See 20 C.F.R. 416.963. The plaintiff was born on November 12, 1959 and was 44 years old on the date of the application was filed. (R. at 29.) At age 45, the ALJ noted that she is a younger individual age 45-49. (Id.)

In response the plaintiff raises a series of constitutional challenges that are conclusory and unsupported. The plaintiff claims that the Commissioner's denial violates the Fourth, Fifth, Seventh and Tenth Amendments of the Constitution. (Pl. Mem. at 4, 5, 7.) With respect to the plaintiff's Seventh Amendment argument, the plaintiff is not entitled to a trial by jury because Congress has the "power to entrust enforcement of statutory rights to an administrative process or specialized court of equity free from the strictures of the Seventh Amendment." Curtis v. Loether, 415 U.S. 189, 195 (1974); see Haskin v. Sec'y of Dep't of Health & Human Servs., 565 F. Supp. 984, 987 (E.D.N.Y. 1983). Congress delegated to the Commissioner the authority to make findings of fact when adjudicating claims for Social Security benefits with review by a court using the standard of substantial evidence. 42 U.S.C. §§ 405(b)(1), 405(g), 1383(c)(1)(A), 1383(c)(3). The plaintiff's remaining constitutional claims are wholly insubstantial and "frivolous" and are properly dismissed. See Barco-Sandoval v. Gonzales, 496 F.3d 132, 137, n. 5 (2d Cir. 2007), citing Arbaugh v. Y & H Corp., 546 U.S. 500, 513 n. 10 (2006).

The plaintiff also submits additional evidence to support her claim that the Commissioner's denial should be reversed. The Act provides that the Court may remand a matter based on new

and material evidence if there is good cause for the failure to present the evidence earlier. See 42 U.S.C. § 405(g). To qualify as new and material, the evidence must be new, not merely cumulative of evidence already in the record, and both relevant to the claimant's condition during the time period for which benefits were denied and probative. Lisa v. Sec'y of Dep't of Health & Human Servs., 940 F.2d 40, 43 (2d Cir. 1991).

Evidence submitted by the plaintiff of medical reports not within the relevant period at issue, namely October 14, 2004 to August 21, 2006, is immaterial. (See Pl.'s Mem. Exs. B, D, H, K, L, M.) The evidence submitted by the plaintiff within the relevant period is not material because it provides no additional information or insight into the plaintiff's functional abilities during the relevant period. A report from March, 2005 notes, "[h]er pulmonary function tests done at EOHSI are normal, however, on physical examination, she was found to have wheezing in her upper lungs zones implying that her asthma is not optimally controlled." (Pl.'s Mem. Ex. E-6.) The plaintiff relies on the finding that her asthma was not optimally controlled but that is far from indicating that the plaintiff is unable to do sedentary work in a controlled environment and it ignores the finding that her pulmonary function tests were normal. Indeed, the fact that her pulmonary function tests were normal supports the Commissioner's

determination that the plaintiff was not disabled. The plaintiff has also submitted a discharge summary dated June 6, 2006, which provided general instructions related to vomiting and diarrhea and is not probative of the plaintiff's alleged disability. (Pl.'s Mem. Ex. J.) Some of the additional evidence submitted by the plaintiff is cumulative of Dr. Golding-Granado's April 2005 report which is in the record and was considered by the ALJ. (See Pl.'s Mem. Exs. F-1, I.) Other evidence submitted by the plaintiff is cumulative, such as the lists of medications used by the plaintiff to control her respiratory condition. (Pl.'s Mem. Exs. A, C.) Therefore, the additional evidence submitted by the plaintiff does not provide new and material evidence to support the plaintiff's claim that she was disabled during the relevant period. She is of course entitled to submit a new application to the Commissioner alleging that she has become entitled after the time covered by the current case.

V.

There is substantial evidence in the record as a whole to support the Commissioner's determination that the plaintiff is not disabled under the Act, and is not entitled to Supplemental Security Income. Therefore, the defendant's motion for judgment

on the pleadings is **granted**. The Clerk is directed to enter judgment dismissing the Complaint and closing this case.

SO ORDERED.

Dated: New York, New York
January 8, 2007

John G. Koeltl
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/8/08